# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| NATURAL ESSENTIALS INC.<br>115 Lena Drive<br>Aurora, OH  44202<br><br>　　　　Plaintiff<br><br>vs.<br><br>OLYMPIA SPORTS COMPANY, INC.<br>281 Fields Lane<br>Brewster, New York  10509<br><br>　　　　Defendant | CASE NO.:<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES** |

Plaintiff Natural Essentials Inc. ("Natural Essentials"), by and through its undersigned attorneys, hereby files this Complaint against Defendant Olympia Sports Company, Inc. ("Olympia"), and in support states as follows:

## INTRODUCTION

1.　　This is an action for breach of contract arising from Olympia's complete failure to deliver promised goods as required by Ohio law.

2.　　In October 2020, Olympia made binding commitments to Natural Essentials that should have culminated quickly in several shipments of nitrile gloves for a specified price and quality.

3.　　Soon after Olympia entered into a contract to provide the nitrile gloves, it realized that the price of the goods involved was rapidly rising. It dragged its feet on delivery, and began a long litany of misleading excuses for its failure to deliver as agreed.

4. Upon information and belief, rather than meeting its contractual obligation to Natural Essentials, Olympia took advantage of the rising market prices to sell the nitrile gloves promised to Natural Essentials to other customers because they were willing to pay more than the agreed contract price with Natural Essentials.

5. Upon information and belief, Olympia used the contract with Natural Essentials to secure purchase order financing and, in turn, to enable it to purchase more nitrile gloves and sell them at a higher price than agreed with Natural Essentials.

6. Olympia is in material breach, having failed to make the promised delivery in a reasonable time under a deal that contemplated delivery to begin in November 2020, with shipping "ASAP."

7. Without the promised goods, Natural Essentials was unable to meet its own customers' needs. Olympia's failure to perform resulted in direct damages and lost business with the State of Texas.

8. To add insult to injury, instead of meeting its obligation to Natural Essentials, Olympia's sales agent sold a portion of the nitrile gloves promised to Natural Essentials and financed by Natural Essentials' directly to the State of Texas for a higher price.

9. Natural Essentials now brings this action to recover damages for breach of the contract (the "Agreement," attached hereto as Exhibit A).

10. Natural Essentials is entitled to damages for Olympia's failure to deliver at the contracted price as agreed together with any incidental and consequential damages resulting from Olympia's breach of the Agreement in excess of $845,000 along with any damages from Olympia's tortious interference with business relations.

## THE PARTIES

11. Natural Essentials is an Ohio corporation with its principal place of business at 115 Lena Drive, Aurora, Ohio 44202.

12. Olympia is a Delaware corporation with its principal place of business at 281 Fields Lane, Brewster, New York 10509.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Natural Essentials and Olympia, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

14. This Court has personal jurisdiction over this action because Olympia created minimum contacts with Ohio by proactively conducting business with an Ohio corporation for the sale and delivery of goods to Ohio.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Natural Essential's claims occurred within this judicial district.

## OLYMPIA'S LIABILITY UNDER THE AGREEMENT

16. In early October 2020, Olympia and Natural Essentials entered into negotiations for purchase of nitrile gloves to supply a government contract in the State of Texas.

17. In a deal memorialized and accepted by Natural Essentials' October 29, 2020 Purchase Order, Olympia promised to deliver 250,000 boxes of nitrile medical examination gloves as specified with shipping "ASAP" for a total of $2,962,500. (*See* Exhibit A.)

18. The day before the Purchase Order was sent, Olympia wrote to Natural Essentials "we can offer you two containers every week to 10 days until you receive the 8 containers, so about a month to 6 weeks" with a "250,000 box cap." (*See* Exhibit B.)

19. The next day, Natural Essentials issued a Purchase Order to Olympia and accepted the offer. (*See* Exhibit A.)

20. The price for the nitrile gloves was set in the Agreement at $11.85 per unit (per box), and Olympia repeatedly acknowledged in writing its obligation to deliver the specified gloves within a reasonable time.

21. The need for prompt delivery was addressed in written exchanges between Natural Essentials and representatives of Olympia for months, including Roger Heumann, Jeff Lee, Barry Shain, and Maryann Bartnik.

22. Roger Heumann is the Chief Executive Officer of Olympia and Jeff Lee is Executive Vice President of Olympia.

23. Barry Shain and Maryann Bartnik are hired sales agents of Olympia.

24. By hiring Barry Shain and Maryann Bartnik to sell nitrile gloves, Olympia "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

25. Olympia had control over the conduct and communications of its sales agents.

26. Natural Essentials repeatedly acknowledged in writing its own obligations to sell the nitrile gloves of specified quality and quantity to the State of Texas, "for the hospitals in Texas." (*See* Exhibit C.)

27. Olympia affirmed its knowledge of Natural Essentials' business deal with the State of Texas when it wrote in early October: "Hopefully your Texas hospital system will find the product satisfactory and hopefully as we continue to bring in containers, the quality of the inspection will improve." (*See* Exhibit D.)

28. As weeks went by, Olympia made assurances about upcoming deliveries, but it only actually delivered defective Safe Flex nitrile gloves not suitable for hospital use that Natural Essentials had no choice but to reject due to the significant quality control problems.

29. Olympia wrote to Natural Essentials stating it had "changed from Safe Flex to V Glove" and represented: "We will bring in production right away. 4 containers a week, of which two of the 4 containers will go to you. [] So, the estimated schedule would be for 2 containers each of the following weeks[:] Week of December 20, Week of December 27, Week of January 3, and Week of January 10." (*See* Exhibit E.)

30. On December 18, 2020, Olympia wrote to Natural Essentials stating "[p]roduction is completed. The inspection will take place next Tuesday, and we have a vessel leaving for NYC on 1/27 as stated previously. We have 4 containers coming. You will be getting the first 2. The boat will arrive in NYC around the 20th of January and then 4 more containers approximately every 10 days or so. We have you down for 8 containers on the first order wave (2 per shipment and 8 more on the second wave[.]" (*See* Exhibit F.)

31. On December 30, 2020, Natural Essentials wrote to Olympia stating it was "under the impression [the nitrile gloves] were at the port and finished" and asking "what's the issue that [has] been causing this never ending delay?"

32. When January arrived, Olympia did nothing to arrange for the promised deliveries.

33. On January 6, 2021, Olympia repudiated its obligation under the Agreement by stating its intention to not perform: "We still want to partner with you and are offering you, your 8 required containers at the adjusted price of $12.35. [] If you want to stay with us on this project, we will support you. If you don't, then let us know and we will sell the product elsewhere, but we are not going to be able to honor a price of $11.85." In February 2021, Olympia retracted its

5

purported repudiation with a later statement agreeing to the original $11.85 unit cost price under the Agreement. (*See* Exhibit G.)

34. On January 22, 2021, Olympia claimed to have changed the nitrile glove brand to hartalega matig nitrile gloves, and assured Natural Essentials that "we are set to make payment on all of these 5 containers on Monday." (*See* Exhibit H.)

35. On February 1, 2021, Olympia told Natural Essentials that the "inventory is in our possession, we just need to get it inspected." (*See* Exhibit I.)

36. No nitrile gloves were delivered.

37. On February 10, 2021, Olympia again claimed to have changed the nitrile glove brand to Wimax and represented that Olympia "will be inspecting our 5 containers [] on Friday" and "on a boat [] next week." (*See* Exhibit J.)

38. Olympia's constantly changing representations continued for months, with no way to sift fact from fiction.

39. Natural Essentials expressed frustration when it wrote to Olympia on February 10, 2021 stating it had "pivoted from the hartelega [gloves and assurances] that [it] had 15 containers of in [its] possession." It also reminded Olympia that the Agreement "was for 8 containers [] and we continue to wait patiently for Olympia to deliver on the PO from October[.]" (*See* Exhibit K.)

40. On February 12, 2021, Maryann Bartnik of Olympia texted Natural Essentials that she "just sold 185,000 boxes [of nitrile gloves] to Texas [Natural Essentials' customer]."

41. On February 26, 2021, Olympia wrote to Natural Essentials and stated it is "awaiting vessel schedule" for the Wimax gloves and attached a photo from the inspection.

42. That same day, Natural Essentials wrote to Olympia and stated it "has now reached a point of crisis, and [the] demand is simple: delivery must be made [] within three calendar days."

43. Natural Essentials explained that this demand for performance under the Uniform Commercial Code (UCC § 2-609 and ORC 1302.67 ) "starts a commercially reasonable timer; by Tuesday midday, if it has not delivered, Olympia will be in material breach."

44. Olympia did nothing to perform, and upon information and belief, Olympia was servicing other customers first simply because they were paying higher rates negotiated after prices had risen. In fact, Olympia admitted that this is what was happening: "we are now selling [to] other customers in the $12.50 – $13.50 range." (*See* Exhibit K.)

45. Upon information and belief, Olympia used the Agreement to secure purchase order financing and, in turn, to enable it to sell nitrile gloves to others.

46. Olympia's non-performance has caused Natural Essentials serious harm.

47. Olympia has no defense for its failure to deliver the promised goods, and ignored a letter sent March 18, 2021. (*See* Exhibit L.)

## NATURAL ESSENTIAL'S DAMAGES FOR OLYMPIA'S BREACH

48. As prices rose sharply, Natural Essentials found itself unable to cover its needs in a commercially reasonable way. It was unable to deliver the nitrile goods to its customers, and it lost the confidence of the customers involved.

49. As a result of Olympia's repudiation, Natural Essentials is entitled to damages which include the delta between the agreed price and the increased market price Olympia was selling to others in early March 2021, when it became clear to Natural Essentials that Olympia was not going to meet its obligations to deliver 250,000 boxes of nitrile gloves at $11.85 per unit as contracted. *See* Ohio Revised Code 1302.87 *Buyer's damages for non-delivery or repudiation - UCC 2-713* ("[T]he measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages").

50. Olympia has also caused enormous foreseeable consequential damages, including loss of contract and prospects with the State of Texas.

51. As a result, Olympia is responsible as a matter of contract law for the consequential damages to Natural Essentials' contract and business prospects. *See* Ohio Revised Code 1302.89 and UCC § 2-715(2)(a). Olympia "had reason to know" of the customer relationship that it was undermining by its willful breach, and, therefore, Natural Essentials' lost profits, including those for the nitrile gloves it was to provide to the State of Texas to be delivered from the order from Olympia — in excess of $845,000 — are recoverable.

52. Olympia has no defense for its repudiation of the Agreement it entered, and no good-faith basis not to deliver what it now owes in damages.

## COUNT ONE: BREACH OF CONTRACT

53. Natural Essentials incorporates the above allegations as if restated here.

54. The Agreement attached as Exhibit A is a valid and binding contract. Olympia and Natural Essentials entered into the Agreement through a clearly documented, negotiated process of offer and acceptance.

55. Natural Essentials substantially performed all its obligations under the Agreement.

56. Despite its repeated assurances to Natural Essentials, Olympia has breached and repudiated the Agreement by failing to deliver the promised nitrile gloves of specified quality.

57. Natural Essentials is entitled to the price differential between the Agreement and the market prices, in an amount to be proved at trial.

58. Natural Essentials is entitled to all incidental and consequential damages foreseeably caused by Olympia's breach, including the lost profits on its future transactions with the customer who was disappointed by the non-delivery of the goods promised from Olympia, in an amount to be proved at trial.

## COUNT TWO: TORTIOUS INTERFERENCE

59. Natural Essentials incorporates the above allegations as if restated here.

60. As early as October 2020, Olympia had knowledge of the business relationship between Natural Essentials and the State of Texas.

61. Upon information and belief, Olympia diverted the business of Natural Essentials to other buyers at higher prices. Olympia has admitted "we are now selling [to] other customers in the $12.50 – $13.50 range." In February 2021, Maryann Bartnik informed Natural Essentials that she "just sold 185,000 boxes [of nitrile gloves] to Texas."

62. Subject to further investigation, Olympia tortiously interfered with business relations with the State of Texas.

63. The lost business with the State of Texas amounts to millions of dollars in lost profits from specific future business, in an amount to be proved at trial.

## COUNT THREE: UNJUST ENRICHMENT

64. Natural Essentials incorporates the above allegations as if restated here.

65. Upon information and belief, Olympia diverted the business of Natural Essentials to other buyers at higher prices.

66. Olympia received a benefit of the price differential between the Agreement price and the higher prices sold to other buyers, including by selling directly to the State of Texas.

67. Olympia received an additional benefit by using Natural Essentials order to secure purchase order financing and, in turn, to enable it to purchase nitrile gloves to sell to others.

68. Olympia has knowledge of the benefit it received from other buyers.

69. Olympia has retained the benefit received, and it has not paid Natural Essentials for the money owed for the benefit.

70. As a result, Olympia has proximately caused injury to Natural Essentials.

71.     Natural Essentials is entitled to the price differential, in an amount to be proved at trial.

## PRAYER FOR RELIEF

In light of the above allegations, Natural Essentials respectfully asks this Court to grant the following relief:

Damages to be proven at trial on the Agreement, including Natural Essentials' lost profits in excess of $845,000 and consequential damages for the foreseeable business harm resulting from the disruption to Natural Essentials' customer relationships. Any other relief this Court deems just and proper, including an award of costs, pre- and post-judgment interest, and other expenses under any applicable law.

Respectfully submitted,

*/s/ Yelena Boxer*
Yelena Boxer (0071379)
James E. von der Heydt (0090920)
Laura E. Kogan (0087453)
**BENESCH, FRIEDLANDER,**
  **COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:   216.363.4588
Emails:       yboxer@beneschlaw.com
                   jvonderHeydt@beneschlaw.com
                   lkogan@beneschlaw.com

*Attorneys for Plaintiff Natural Essentials Inc.*

14447991 v1